# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BEVERLY DENISE MONDY | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-644 |
| | § | (Judge Mazzant) |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act), 42 U.S.C. § 423. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be remanded.

## HISTORY OF THE CASE

Plaintiff filed her application for disability insurance benefits under Title II on October 20, 2009, alleging disability beginning on April 23, 2009 (TR 122-125). This application was denied initially by notice and upon reconsideration, after which the claimant timely requested a hearing before an Administrative Law Judge ("ALJ") (TR 58, 60-63, 92, 59, 66-68). After holding a hearing, the ALJ denied benefits on December 3, 2010 (TR 30, 57, 17-29). Plaintiff requested Appeals Council review of the ALJ's decision, and on February 24, 2012, the Appeals Council denied review (TR 9-11).

## STATEMENT OF THE FACTS

Plaintiff was born on November 27, 1961, making her a 48-year-old female at the time of her ALJ hearing. She has been a "younger individual" within the meaning of 20 C.F.R. § 404.1563 for

the entirety of these proceedings. Plaintiff completed high school, but did not graduate (TR 37). Plaintiff's past relevant work is as certified nursing assistant ("CNA").

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After a discussion of the medical data regarding Plaintiff and hearing testimony, the ALJ made the prescribed sequential evaluation. The ALJ held that Plaintiff had not performed substantial gainful work since her alleged onset date of disability (TR 22). The ALJ concluded that Plaintiff had severe medical impairments including bilateral tibia fractures and essential hypertension (TR 22). However, the ALJ found that the Plaintiff did not have a medical impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 (TR 22). The ALJ determined Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally, and ten pounds frequently. The ALJ also found that she could perform light work, except that she should not kneel, crawl, or squat. The ALJ found that she could stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday at two-hour intervals (TR 22). The ALJ held that Plaintiff could not perform her past relevant work as a CNA as that work was semi-skilled and performed by Plaintiff at the heavy to very heavy exertional level (TR 24). The ALJ then held, at step five, that there were jobs available in the national economy that Plaintiff could perform including a home care companion, clerical worker, or assembler, and was not disabled (TR 25-26).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below. 20 C.F.R. § 404.1520(a)(4).

## **SEQUENTIAL EVALUATION PROCESS**

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (2012). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (2012). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (2013). 20 C.F.R. § 404.1520(d) (2012). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (2012). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available

in the national economy.  20 C.F.R. § 404.1529(f) (2012); 42 U.S.C. § 1382(a).

## ANALYSIS

In her appeal, Plaintiff asserts that the ALJ failed to properly evaluate the treating opinion of her treating physician, Dr. Lawrence, which necessitates remand.

On April 23, 2009, Plaintiff was admitted to the emergency room at the Medical Center of McKinney after she was involved in a car accident (TR 209–220).  Doctors Robert Berry and Charles Toulson determined that she suffered bilateral tibial plateau fractures which required surgery.  On April 24, 2009, Drs. Berry and Toulson performed ORIF2 surgery on both knees (TR 213) and thereafter she was discharged to the Wysong rehabilitation facility in Mckinney (TR 210).

In July 2009, pain persisted in Plaintiff's right knee as she experienced "severe" stiffness and a decreased range of motion with only a ten-to-forty degree flexion contracture. (TR 205–08).  To fix the "arthrofibrosis" of Plaintiff's right knee, Dr. Toulson performed a manipulation under anesthesia. (TR 205–206). Dr. Toulson described that his rehabilitation goal for Plaintiff was to get her walking again without the assistive devices she required at that time (TR 205).  After both procedures, Plaintiff rehabilitated at Wysong and was eventually discharged home (TR 199, 266, 273).

On March 8, 2010, non-treating medical consultant Dr. Judith Graves examined Plaintiff (TR 225–30) and observed her slow gait and her use of an assistive cane to ambulate (TR 227). Dr. Graves noted that despite going through one to two weeks of inpatient rehabilitation, and another two months of at-home physical therapy, Plaintiff continued to have pain and swelling in her bilateral knees (TR 225).  Dr. Graves also noted that the swelling and pain that Plaintiff described as burning, sharp, dull and aching, was worse in the right knee (TR 225-226). Dr. Graves reported that there was small joint effusion in Plaintiff's right knee, moderate to severe crepitus, a decreased

range of motion of the knees to approximately eighty to ninety degrees, and an inability to squat or kneel. (TR 228, 230).

On March 18, 2010, non-examining medical consultant, Dr. Frederick Cremona, issued a physical residual functional capacity assessment (TR 231–238). Dr. Cremona listed the bilateral ORIF of the tibias as the primary diagnosis and bilateral knee pain as the secondary diagnosis (TR 231). Dr. Cremona further opined that Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk for a total of at least two hours in an eight-hour workday; sit for a total of six hours in an eight-hour day; and was limited in pushing or pulling by her lower extremities (TR 232). He also determined that Plaintiff could never climb ropes, ladders, or scaffolds, and could never kneel, but could occasionally climb ramps or stairs, balance, stoop, crouch, or crawl (TR 233).

On September 13, 2010, Dr. Neal Christopher Lawrence, who treated Plaintiff for various impairments since 2009, issued a physical assessment of her abilities to perform work-related activities (TR 294–295). Dr. Lawrence opined that Plaintiff's lifting and carrying ability were affected because of her poor range of motion and mobility, and her inability to extend her right knee (TR 294). Dr. Lawrence found that Plaintiff could occasionally lift or carry ten pounds and could frequently carry five pounds (TR 294). Dr. Lawrence also opined that Plaintiff's standing and walking abilities were affected because of her poor range of motion and functioning of her knees, and as such, Plaintiff could stand no more than two hours in an eight-hour workday (TR 294). Dr. Lawrence also opined that Plaintiff's sitting ability was affected by her pain in flexion and extension and, as a result, she could sit no more than four hours in an eight-hour workday (TR 294).

Dr. Lawrence also was of the opinion that lying down and elevating her knees would be medically necessary (TR 294). Specifically, he noted that she would need to lie down for two hours

in an eight-hour day and would need to elevate her knees to the height of a stool for two hours of an eight-hour day (TR 294). Dr. Lawrence then determined that Plaintiff could never climb, stoop, crouch, kneel, or crawl, and could balance only occasionally (TR 295). Lastly, he found that in an eight-hour workday, Plaintiff's consistency would be sporadic due to reasonably expected exacerbations of her condition (TR 295).

At the administrative hearing, Plaintiff testified that she had daily pain in her knee that only allowed her to sit or stand for fifteen to twenty minutes without discomfort (TR 40, 41). She explained that she could not walk a city block (TR 41). She would lie down every couple of hours for one to two hours at a time (TR 43). A letter from Plaintiff's husband revealed that since her car accident, she was unable to complete basic household activities (TR 300).

Plaintiff also suffered from heart-related issues. In 2007 and 2009, Dr. Faisal Wahid treated Plaintiff and diagnosed her with nonischemic cardiomyopathy (TR 261). On September 14, 2009, Plaintiff presented to Dr. Wahid and complained of shortness of breath, fatigue, and multiple cardiac symptoms (TR 255, 257). After an abnormal perfusion scan, Plaintiff underwent a left heart catheritization which revealed mild nonobstructive atheroslerotic heart disease with a mildly decreased left ventricular global ejection fraction of 45–50%. (TR 255, 257, 253).

In a December 2009 follow-up with Dr. Wahid, a 2D echocardiogram revealed an ejection function of 48–50% (TR 254). Plaintiff was advised to continue with her medications as well as take an increased dosage of Coreg (TR 253).

In April 2010, Plaintiff again presented to Dr. Wahid and complained of shortness of breath and occasional chest pains (TR 251). Her shortness of breath was frequent and lasted either a few seconds or up to minutes at a time and was mild in intensity. The shortness of breath was aggravated by exertion and alleviated by rest. Her chest pain was central, frequent, mild in severity, lasted

seconds to minutes, and did not radiate. Like her shortness of breath, the chest pain was triggered by exertion and alleviated with rest (TR 251). At her hearing, Plaintiff explained that since she reported to doctors, her heart functioning has not improved (TR 38).

In addition, treating doctors observed and diagnosed Plaintiff with hypertension and hypothyroidism (TR 194, 199, 226, 245, 247, 253, 298). At her hearing, Plaintiff described her low thyroid levels as "out of whack," and explained how her prescribed medicines have not worked. (TR 39).

At the administrative hearing, the vocational expert testified that Plaintiff could not perform any of her past relevant work as it was heavy to very heavy in exertion, but there were jobs that she could perform, including a home care companion, clerical worker, or assembler (TR 52–53). The vocational expert also testified that an individual with an ability to stand or walk for less than two hours, and sit for less than four hours, would be precluded from full-time work (TR 54).

Plaintiff asserts that the ALJ failed to adequately evaluate the medical opinion of her treating physician, Dr. Lawrence. Plaintiff argues that the ALJ gave no indication of the weight he assigned to the treating opinions of Dr. Lawrence (TR 23). The ALJ acknowledged that "Dr. Lawrence provided a statement that the claimant was limited in lifting, carrying, standing, walking and sitting by poor mobility and increased pain and flexion in her knees" (TR 23). Plaintiff asserts that the rejection of Dr. Lawrence's opinions is presumed, as the ALJ's residual functional capacity finding failed to include the doctor's limitations (TR 22).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing *Greenspan*, 38 F.3d at 237). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratpry, or disgnostic technigues, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

Where the ALJ rejects the opinion of the treating physician, the Fifth Circuit has held that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id*. at 453. Under the statutory analysis, the ALJ must evaluate: (1) the "length of the treatment relationship and the frequency of the examination," (2) the "nature and extent of the treatment relationship," (3) the supporting evidence presented by the physician, (4) the level of consistency between the physician's opinion and the record, (5) the physician's specialization, and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(2)-(6). However, perfection in administrative proceedings is not required, and a judgment will not be vacated unless the substantial rights of a party have been affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

The ALJ is also permitted to "assign little or no weight to the opinion of a treating physician when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 455-56. SSR 96-2p states that a medical source statement from a treating source, well-supported by medically acceptable evidence, and not

inconsistent with other substantial evidence in the record, is entitled to controlling weight. *See* SSR 96-2p at *2; *Newton*, 209 F.3d at 456. However, the ruling further explains:

> If any of the [six] factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.

*See* SSR 96-2p at *2; *Newton*, 209 F.3d at 456.

Finally, the Fifth Circuit has held that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (emphasis added); *see also Martinez*, 64 F.3d at 176 ("Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status" and "is free to reject the opinion of any physician when the evidence supports a contrary conclusion").

The Commissioner concedes that "[b]ecause Dr. Lawrence clearly had a treating relationship with Plaintiff, the ALJ was required to explain his reasoning for not adopting Dr. Lawrence's opinion by expressly evaluating the opinion pursuant to 20 C.F.R. § 404.1527; *Newton*, 209 F.3d at 453. The Commissioner also concedes that although the ALJ "stated he considered the opinion evidence in accordance with the requirements of section 404.1527, he did not articulate his analysis" (TR 23). However, the Commissioner asserts that this deficiency does not require remand.

Dr. Lawrence was of the opinion that Plaintiff could occasionally lift or carry ten pounds and could frequently carry five pounds (TR 294). Dr. Lawrence also was of the opinion that Plaintiff could stand no more than two hours in an eight-hour workday and could sit no more than four hours

in an eight-hour workday. The doctor also noted that Plaintiff would need to lie down for two hours in an eight-hour day and elevate her knees to the height of a stool for two hours of an eight-hour day. (TR 294). Dr. Lawrence determined that Plaintiff's consistency in a work environment would be sporadic due to reasonably expected exacerbations of her condition (TR 295).

In this case, the ALJ erred by not applying the six factors and providing good cause for rejecting Dr. Lawrence's opinions. Plaintiff asserts that although procedural perfection in administrative proceedings is not required so long as the substantial rights of a party have not been affected, Dr. Lawrence's treating opinions conflict with the ALJ's residual functional capacity findings. Therefore, proper consideration of the doctor's treating opinions could have led to a different result in her case.

The ALJ gave no indication of the weight he assigned to the treating opinions of Dr. Lawrence, not did he provide an analysis of the 20 C.F.R. § 404.1527(d)(2) factors before he presumably rejected the doctor's opinions. The record contained no other treating or examining opinion regarding Plaintiff's functional limitations that directly contradicted Dr. Lawrence's opinions. The Commissioner contends that Plaintiff failed to explain how evaluation pursuant to 20 C.F.R. § 404.1527 would lead the ALJ to credit Dr. Lawrence's. The Commissioner then engages in a weighing of Dr. Lawrence's opinion under the 20 C.F.R. § 404.1527 factors.

The Fifth Circuit requires that the ALJ's failure to provide analysis and reasoning for the rejection of a treating opinion requires remand when the ALJ does not rely give reasons for rejecting that opinion and fails to present good cause for why the ALJ rejected it. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Newton*, 209 F.3d at 458; *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir.1980). A claimant's substantial rights are affected by the ALJ's failure to perform the correct analysis. *See Beasley v. Barnhart*, 191 F. App'x 331, 336

(5th Cir. 2006).

Plaintiff was correct in arguing that the ALJ failed to discuss the opinions of the Plaintiff's treating physician, Dr. Lawrence. The treating physician's opinions greatly favored Plaintiff, and the ALJ did apply the proper legal standards to reject the treating physician's opinions. The ALJ's decision to provide little or no weight to the testimony of the treating physician is not supported by substantial evidence. Dr. Lawrence's opinions clearly contradicted the ALJ's findings, yet the ALJ did not weigh the doctor's opinions or provide articulated reasons for his presumed rejection of the opinions. Upon remand, the ALJ should consider the treating sources, and if rejected, explain why the opinions are rejected.

Pursuant to the foregoing, the decision of the Administrative Law Judge is hereby **REMANDED** for further review.

**SIGNED this 21st day of March, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE